OPINION *Page 2 
{¶ 1} On November 2, 2006, appellant, Garry Arbaugh, was charged with two counts of public indecency in violation of R.C. 2907.09 and one count of menacing in violation of R.C. 2903.22. Said charges arose from an incident wherein appellant exposed his penis while driving his vehicle alongside the vehicle of Melissa Cullums.
 {¶ 2} A jury trial was held on May 29, 2007. Prior to trial, the menacing charge was dismissed. The jury found appellant guilty of both public indecency charges.
 {¶ 3} On June 11, 2007, appellant filed a motion for new trial. By journal entry filed June 29, 2007, the trial court denied the motion. Also on June 29, 2007, the trial court sentenced appellant to sixty days in jail with thirty days suspended.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "THE TRIAL COURT ERRED IN FAILING TO GRANT THE MOTION FOR JUDGMENT OF ACQUITAL (CRIM.R.29) OR THE MOTION FOR A NEW TRIAL, AS THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH THAT GARRY ARBAUGH COMMITTED THE CRIMES. IN ADDITON, THE CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 II {¶ 6} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A CONTINUANCE TO OBTAIN EXPERT TESTIMONY REGARDING THE SIGHT LINES FROM THE COMPLAINING WITNESS' VEHICLE, AS WELL AS BY OVERRULING VARIOUS EVIDENTIARY OBJECTIONS." *Page 3 
 III {¶ 7} "THE TRIAL COURT ERRED IN MAKING DEROGATORY COMMENTS ABOUT THE EVIDENCE DURING THE RULE 29 HEARING IN FRONT OF THE JURY, AND INTERRUPTING APPELLANT'S CROSS-EXAMINATION AND MAKING SUA SPONTE OBJECTIONS."
 IV {¶ 8} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SEC. 10 OF THE OHIO CONSTITUTION, WHEN TRIAL COUNSEL FAILED TO ENSURE THAT THE EXPERT WITNESS WAS IN ATTENDANCE AT THE TRIAL, AND FAILED TO SUBPOENA THE EXPERT WITNESS."
 I {¶ 9} Appellant claims his conviction was against the sufficiency and manifest weight of the evidence. Also, appellant claims his Crim. R. 29 motion for acquittal and Crim. R. 33 motion for new trial should have been granted. We disagree.
 {¶ 10} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks at paragraph two of the syllabus, following Jackson v.Virginia (1979), 443 U.S. 307. On review for manifest weight, a reviewing court is to examine the entire record, weigh the *Page 4 
evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 11} Crim. R. 29 governs motion for acquittal. Subsection (A) states the following:
 {¶ 12} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 13} The standard to be employed by a trial court in determining a Crim. R. 29 motion is set out in State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus:
 {¶ l4} "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 15} The granting of a new trial lies in the trial court's sound discretion. State v. Petro (1974), 148 Ohio St. 505. In order to find an abuse of that discretion, we must *Page 5 
determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 16} Appellant was convicted of public indecency in violation of R.C. 2907.09(A)(1) and (3) which state the following:
 {¶ 17} "(A) No person shall recklessly do any of the following, under circumstances in which the person's conduct is likely to be viewed by and affront others who are in the person's physical proximity and who are not members of the person's household:
 {¶ 18} "(1) Expose the person's private parts;
 {¶ 19} "(3) Engage in conduct that to an ordinary observer would appear to be sexual conduct or masturbation."
 {¶ 20} Appellant's challenges are two-fold. First, appellant argues the complaining witness's testimony was simply not credible as it was impossible for appellant to have done what she testified to and impossible for her to have seen what she testified to. Secondly, appellant argues the jury disregarded his credible "alibi witnesses" who claimed the vehicle identified was not traveling on Route 33 at the time of the incident.
 {¶ 21} The complaining witness, Melissa Cullums, testified to seeing a black Tahoe pull along side of her, and the driver was gesturing to her to flash him. T. at 40. He then pulled along side of her with his penis in one hand and putting a thumbs up with the other. T. 41. Ms. Cullums stated he appeared to be masturbating. T. at 43, 56, 60, 107. She did not recognize the vehicle or know the person exposing himself to her. T. *Page 6 
at 49. She identified appellant as the "flasher" from a photo array, and positively identified appellant in the courtroom. T. at 50, 52-55, 114, 128-129; Plaintiff's Exhibit 1. Ms. Cullums gave a detailed description of how appellant was positioned in his vehicle, their respective distances (2½ to 4 feet apart), and what she observed appellant doing. T. at 56, 60, 86-87. She found appellant's behavior offensive and frightening, because she did not know what he was going to do or if he was going to follow her. T. at 44, 60. The "911" tape was played for the jury. T. at 66. State Highway Patrol Trooper Brian Jones testified the license plate number reported by Ms. Cullums was registered to appellant. T. at 115, 155.
 {¶ 22} During Trooper Jones's investigation, Trooper Jones asked appellant if he was in the area of U.S. 33 on the date and time in question and appellant responded, "If it was my truck seen, then I must have been." T. at 134.
 {¶ 23} The defense presented photographs of appellant's vehicle next to a vehicle similar in size and shape to Ms. Cullum's vehicle. T. at 171; Exhibits A-F. A woman was sitting in "Ms. Cullum's" vehicle. Id. Douglas Kettron, an attorney by trade, took the photographs, and testified Ms. Cullums could not have seen below the Tahoe's steering wheel, and appellant could not have "stood up" to "get his body above the steering wheel" so that it was visible. T. at 177-178. Mr. Kettron opined because of the steering wheel, appellant could not have raised himself higher than three to four inches. T. at 179.
 {¶ 24} Appellant's mother, Kate Arbaugh, testified appellant was driving a Chevy Blazer at the time in question. T. at 210, 212. Walter Manning and Joseph Shipman *Page 7 
testified at the time and date in question, appellant's Tahoe was parked in the driveway and appellant was driving the Blazer. T. at 228-229, 247-250.
 {¶ 25} Appellant testified he was not driving his Tahoe at the time of the incident. T. at 270.
 {¶ 26} The jury was presented with two different versions, and chose to disregard the vehicle's alibi witnesses in the light of Ms. Cullum's positive identification from the photo array and the fact that the vehicle's license plate was registered to appellant. The possibility of a mistaken identification is overridden by the fact that the vehicle's license plate matched the vehicle's description and was registered to the same person Ms. Cullums positively identified from the photo array. These facts lead beyond mere coincidences to the establishment of circumstantial evidence based upon directly perceived facts à laJenks.
 {¶ 27} Upon review, we find there was sufficient evidence to deny the Crim. R. 29 motion for acquittal, and support the conviction for public indecency. We do not find any manifest miscarriage of justice. The trial court did not err in denying the motion for new trial.
 {¶ 28} Assignment of Error I is denied.
 II {¶ 29} Appellant claims the trial court erred in denying his motion for a continuance in order to obtain the testimony of an expert. We disagree.
 {¶ 30} The grant or denial of a continuance rests in the trial court's sound discretion. State v. Unger (1981), 67 Ohio St.2d 65;Blakemore. *Page 8 
 {¶ 31} Appellant argues the trial court should have granted the continuance to examine Ms. Cullum's vehicle and obtain expert testimony given the fact that the trial court granted the state's motion for a jury view of the two vehicles. We find comparing the failure to subpoena a witness is not equal to the request for a jury view. A jury view may be requested before or during a trial and the timeliness of it is judged by a different standard.
 {¶ 32} On the issue of the expert, the trial court and defense counsel engaged in the following dialogue:
 {¶ 33} "THE COURT: Okay. And, Mr. Vasko, you also indicated to me last Friday, of course, yesterday was a holiday, but, um, that your, you were saying that you needed a continuance because your expert witness needed more time to present.
 {¶ 34} "ATTY. VASKO: That's correct.
 {¶ 35} "THE COURT: Uh, however, you also indicated to me that the last time you were scheduled for jury trial, uh, you did request a continuance and I granted it, but that he had the, he had actually one day less in order to prepare. Um, and, and my thought was, um, he, he needed to be ready and for some reason was not ready and he had one extra day for this newly scheduled jury trial, if that even makes sense, than he did the last time we were scheduled for a jury trial a week ago. Um, so the Court denied your request for a continuance, but then likewise, Mr. Wideman has asked for a continuance and the Court has denied that. So, undoubtedly, we're here for the jury trial." T. at 29-30.
 {¶ 36} We find no abuse of discretion by the trial court in refusing a second continuance for the same reason. Further, no objection to the trial court allowing the *Page 9 
jurors to get into the vehicles and observing the sight visibility was made other than to point out that none of the jurors was Ms. Cullum's height (five foot or less). T. at 24-25.
 {¶ 37} Appellant also challenges the authenticity of the photo array and the chain of custody relative to the 911 tape.
 {¶ 38} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173;Blakemore.
 {¶ 39} Appellant argues the photo array should not have been admitted because the person who compiled the photographs did not testify as to how he compiled the photos:
 {¶ 40} "PROS. WIDEMAN: (Whispered) State's Exhibit 1 is the photo array.
 {¶ 41} "THE COURT: (Whispered) Okay. Any opposition?
 {¶ 42} "(Pause)
 {¶ 43} "ATTY. VASKO: (Whispered) I don't think that the party that produced this array was here, so (inaudible) opportunity to (inaudible) how he compiled these faces.
 {¶ 44} "THE COURT: (Whispered) Why does it matter how he compiled them?
 {¶ 45} "ATTY. VASKO: (Whispered) Well the defense (inaudible) know these things. . . .
 {¶ 46} "THE COURT: (Whispered) Tell me, tell me how that's. . . .
 {¶ 47} "ATTY. VASKO: (Whispered) There may be something inappropriate in the compilation of this. I understand what this looks like (inaudible) faces, but I don't know what the source of this information was and I don't know how he, how (inaudible) known criminals or (inaudible) police officers or (inaudible). *Page 10 
 {¶ 48} "THE COURT: (Whispered) Okay. Over, objection overruled. It's coming in." T. at 159-160.
 {¶ 49} If there was an issue as to the source of appellant's identification in the photo array, such was challengeable in a motion to suppress, not an objection on authenticity. Trooper Jones testified as to the process of setting up the photo array. T. at 114, 124-126. He further testified Plaintiff's Exhibit 1 was the photo array he showed to Ms. Cullums and she identified appellant "without hesitation." T. at 127-129. We find its admission was not error as the substantive issue was the identity of appellant and both Ms. Cullums and Trooper Jones testified to appellant's identification. T. at 52-53.
 {¶ 50} Lastly, appellant claims no chain of custody was established as to the 911 tape. The only objection at trial was by defense counsel for the redaction of a portion of the tape which the state agreed to do. T. at 161-162.
 {¶ 51} Upon review, we find the trial court did not err in denying appellant's motion for a continuance or err on the various evidentiary challenges.
 {¶ 52} Assignment of Error II is denied.
 III {¶ 53} Appellant claims the trial court made "derogatory" comments on the record in front of the jury during the Crim. R. 29 motion hearing, interrupted cross-examination, and made sua sponte objections. We disagree.
 {¶ 54} The "derogatory" comments were made during a ruling on appellant's motion for acquittal. The motion was made after the jury was given a recess and the transcript notes "OFF RECORD." T. at 162-165. Thereafter, the trial court states, "So *Page 11 
we are back on the record." T. at 167. See, App. R. 9(C) Statement filed December 17, 2007.
 {¶ 55} No prejudice could have occurred because the jury did not hear the comments.
 {¶ 56} Appellant also claims the trial court interrupted his cross-examination of Trooper Jones. T. at 143-144. The trial court sua sponte struck a question posed to the trooper:
 {¶ 57} "Q. You already made up your mind that he was going to be charged.
 {¶ 58} "A. No, sir. No, sir. We spoke over the phone and I told him this was a voluntary statement by phone.
 {¶ 59} "THE COURT: Counsel, please approach.
 {¶ 60} "(Pause)
 {¶ 61} "THE COURT: (Whispered) Where are you going with that? Because it's kind of misleading. I don't, I don't really (inaudible).
 {¶ 62} "* * *
 {¶ 63} "PROS. WIDEMAN: (Whispered) Well, your Honor, I know where you're coming from. I think that, uh, we're starting to get into this whole Miranda issue and that type of thing and I think that's dangerous territory for a jury.
 {¶ 64} "THE COURT: (Whispered) Yeah, I think, I think what I'm going to do is, uh, I'm going to go ahead just have the jurors not consider the last question or answer. * * * Okay Jurors, um, based on my own motion, the last question that was asked and the last answer given, it's being stricken. You're just not to consider it at all, okay? Please continue." T. at 143-144. *Page 12 
 {¶ 65} Clearly, the voluntariness of a statement and the issue of custodial interrogation are not jury issues, but issues to be raised prior to trial. Crim. R. 7. Appellant was not prejudiced by the trial court forestalling a discussion on an issue that was not within the jury's province to decide.
 {¶ 66} Upon review, we find no error by the trial court in the complained of areas.
 {¶ 67} Assignment of Error III is denied.
 IV {¶ 68} Appellant claims his trial counsel was deficient in failing to have the expert witness at trial. We disagree.
 {¶ 69} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 70} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976],48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)
 {¶ 71} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 72} Appellant presented the testimony of Douglas Kettron, an attorney by trade, and the photographs he took of two vehicles similar to the vehicles sub judice and *Page 13 
the perspectives of the occupants. Exhibits A-F. A jury view was granted, although appellant had objected to it. The issue was argued by defense counsel during closing arguments. T. at 289-290.
 {¶ 73} No proffer of the expert's testimony was offered to determine if it would have been valuable or germane. Without such a proffer, appellant is unable to demonstrate any deficiency in defense counsel's conduct resulting in prejudice to him or affecting the outcome of the trial. Despite any analysis of the possible deficiency, the second prong of Bradley cannot be demonstrated.
 {¶ 74} Assignment of Error IV is denied.
 {¶ 75} The judgment of the Municipal Court of Fairfield County, Ohio is hereby affirmed.
 By Farmer, J. Hoffman, P.J. and Edwards, J. concur. *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Municipal Court of Fairfield County, Ohio is affirmed. *Page 1